**FUEL DISTRIBUTORS, INC.,**
Appellant,

v.

**RAILROAD COMMISSION OF TEXAS,**
et al., Appellees.

**No. 3–86–032–CV.**

Court of Appeals of Texas,
Austin.

Feb. 25, 1987.

Rehearing Denied April 8, 1987.

David B. Kultgen, Geard & Kultgen, Waco, for appellant.

Jim Mattox, Atty. Gen., Douglas Faser, Asst. Atty. Gen., Austin, for Railroad Com'n of Texas.

William D. White, Jr., Rain Harrell Emery Young & Doke, Dallas, for Chemical Exp. Carriers, Inc. and Andrews Transport Co.

Timothy J. Herman, Herman, Spellings & DeShazo, Austin, for Coastal Transport Co., Inc.

James M. Doherty, Doherty & Munson, Austin, for DSI Transports, Inc.

Ted Mishtal, Clark, Thomas, Winters & Newton, Austin, for Mission Transport Co., Inc.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

POWERS, Justice.

Fuel Distributors, Inc., appellant, sued the Texas Railroad Commission in a Travis County district court for judicial review of a final order issued by the agency in a contested-case proceeding. The order denies appellant's application for official authority to do business as a "specialized motor carrier" transporting hydrocarbons between all points in ten central Texas counties. The district court refused to reverse the Commission's order and this appeal ensued. We will affirm the judgment below. Tex.Rev.Civ.Stat.Ann. arts. 911b,

§§ 5a(c)–(g), 20 (1964 and Supp.1986) (Texas Motor Carrier Act); 6252–13a, §§ 19, 20 (Supp.1986) (Texas Administrative Procedure and Texas Register Act, or "APTRA").

## THE REGULATORY STATUTE

The provisions of art. 911b, § 5a(c)–(g) pertain to the Commission's statutorily assigned function of issuing certificates of public convenience and necessity to persons wishing to engage in the business of a "specialized motor carrier," a term defined in § 1(i) of the statute. In § 5a(d), it is provided that the Commission "shall" issue the certificate to an eligible applicant "unless" the following are established in a contested-case proceeding before the Commission:

(1) the services and facilities of the existing carriers serving the territory or any part thereof are adequate; or

(2) there does not exist a public necessity for such service; or

(3) the public convenience will not be promoted by granting said application.

The same § 5a(d) also adopts by reference certain other provisions of art. 911b and makes them applicable to contested-case proceedings looking to the issuance of "specialized motor carrier" certificates, namely: §§ 4(e), 8, 9, 11, 12, 13, 13a, 14 and 15. Section 4(e) provides as follows:

... With respect to showing public convenience and necessity, the applicant is required to prove a prima facie case that the public convenience would be promoted and a prima facie case that a public necessity exists, and in these circumstances, the burden of proof to show that the public convenience would not be promoted or that a public necessity does not exist for the proposed service or that the existing carriers are rendering a reasonably adequate service shifts from the applicant to the opposing carrier or carriers.

## THE AGENCY ORDER

Following the contested-case proceeding mandated by art. 911b, § 11, and the giving of notice to competing carriers as therein required, an evidentiary hearing was held by the Commission on appellant's application. The Commission subsequently issued its final order denying the application and adopting the findings of fact and conclusions of law recommended by the hearing examiner in his proposal for decision. In his proposal, the hearing examiner recited as follows:

\* \* \* \* \* \*

In the instant proceeding, the applicant has failed to make the required *prima facie* showing. No shipper witness appeared in support of the proposed service. As a result, this record is devoid of facts to justify a finding of shipper need. Applicant has failed to meet its threshold burden of proof.

### Conclusions

The examiner concludes that the applicant in the instant proceeding has failed to show that there exists a public need for the proposed service.

\* \* \* \* \* \*

In a section denominated "findings of fact," the examiner set forth his determination that six specialized motor carriers were presently authorized to transport petroleum products in the ten counties as part of their authority to operate in a wider geographical area; and, stated his findings that appellant presently transports refined gasoline and related products as part of its business of selling gasoline at retail "from convenience store sites operated by its sister corporation, Zippy Foods."

The district court having refused to reverse the Commission's order, appellant appealed to this Court on two points of error complaining of procedural errors upon which the order assertedly rests.

## DENIAL OF DEPOSITION COMMISSIONS

In appellant's first point of error, it complains of the Commission's action in denying appellant's applications for commissions to take the oral depositions of the chief executive officers of the ten carriers who appeared in the agency proceeding and

opposed the authority requested by appellant. In the applications, appellant had stated that the depositions were required "in order to determine the grounds for" each carrier's "objection and present evidence to overcome" such objection. In its order denying the applications, the Commission stated that appellant "has failed to show good cause for issuance of the" requested commissions.

■ Appellant argues first that it was entitled to the commissions as a matter of absolute right under the terms of Tex.Rev. Civ.Stat.Ann. art. 6472a (Supp.1987). That statute provides that "any interested party" in "matters pending for hearing before the" Commission "shall have the *right* to produce the testimony of any witness ... by ... oral depositions instead of compelling the personal attendance of witnesses." (emphasis added). This is not a provision for depositions on a "notice" basis, but rather on a commission basis. While the statute does speak of a "right," we observe that nothing in the statute purports to *require* the Commission to issue a commission for the purpose; rather, the statute merely "empower[s] and authorize[s]" the Commission to do so, presumably on application by the "interested party." This implies that issuance of the commission is discretionary with the Commission, which arguably implies that the agency may require a showing of good cause as it has done by its regulations, consistent with a similar requirement that existed in APTRA § 14(d) at the time material to the present case:

> On its own motion or on written request of any party to a contested case pending before it, *on a showing of good cause*, ... an agency shall issue a commission ... to require that the deposition of a witness be taken....

Texas Administrative Procedure and Texas Register Act, ch. 61, § 14, 1975 Tex.Gen. Laws 142, *amended by* Act of August 26, 1985, ch. 570, § 2, 1985 Tex.Gen.Laws 2190. (emphasis added). The provision has been since amended to delete from § 14(d) the requirement of "a showing of good cause."

Appellant contends alternatively that it did make a "showing of good cause." We need not discuss further the issue in question, however, for we cannot see that any "substantial rights of the appellant have been prejudiced" if we assume the Commission's action was indeed a legal error. AP-TRA § 19(e). Under that statute, we may reverse the Commission's final order only if the agency error prejudices such a right. *Id.* That is not the case here.

■ We conclude as we do in that regard because the Commission's final order rests upon a determination that appellant did not adduce sufficient evidence to constitute a "prima facie case" of "public necessity" regarding its proposed service. Tex.Rev.Civ.Stat.Ann. art. 911b, § 4(e). When it speaks of a "prima facie" case being shown, we believe § 4(e) rather clearly means a state of the evidence where the applicant has adduced evidence sufficient in quality and kind, on all the requisite factors under art. 911b, so as to shift the burden of proceeding over to any opponent on pain of the applicant's receiving his certificate if the opponent fails to offer contrary evidence or impeach that of the applicant. *See* 1 Ray, *Law of Evidence* § 47, at 62 (1980). Here, the Commission determined that appellant had *not* carried its *initial* burden as a proponent of the proposition that a "public necessity" existed for its proposed service. Appellant contends this was erroneous as well, in its second point of error, but for the purposes of its first point of error we do not see how appellant's failure to learn the competing carriers' "objections" and the grounds therefor could have prejudiced appellant's ability to make an evidentiary showing on the impersonal and objective question of whether a "public necessity" existed to justify the proposed new service. Appellant makes no contention whatever that it was prejudiced in *that* regard because the Commission refused to issue the deposition commissions. Accordingly, we overrule appellant's first point of error.

## FAILURE TO MAKE A PRIMA FACIE SHOWING OF PUBLIC NECESSITY

As mentioned previously, the Commission's final order contains the statement

that "[n]o shipper witness appeared in support of the proposed service" and *"[a]s a result,* this record is *devoid* of facts to justify a finding of *shipper* need"; and from this, the Commission evidently reached its conclusion of law that appellant had not shown "a *public* need for the proposed service." (emphasis added). We should first ascertain the intended meaning of these statements for it is not altogether clear.

■ In the words of the statute, appellant was "required to prove a prima facie case ... that a public necessity exists" for the service it proposed. Tex.Rev.Civ.Stat. Ann. art. 911b, § 4(e), *supra.* From the portions of the order quoted above, it is evident that the Commission believed that *shipper* need was an indispensable element of *public* necessity, at least in the circumstances of the present case. Appellant does not quarrel with this proposition. The apparent basis for it lies in art. 911b, § 8, directing the Commission to consider "the demand for, or need of additional service...." Instead, appellant complains that the Commission's order demonstrates that it in effect *required* the testimony of a *shipper* on the issue of public necessity, as opposed to a person who might testify about such necessity even though he was not himself a shipper. Such is the meaning appellant imputes to the Commission's order. Upon that premise, appellant erects the following argument: (1) no statute requires the testimony of a shipper, as such, on the question of public necessity; (2) therefore, any person with knowledge of the facts may give testimony on the question; (3) appellant's expert witness, an economist, was such a person; (4) his testimony on the question was that there existed, in his opinion, a public necessity for the proposed service; (5) his testimony was the sole evidence on the question; (6) therefore, the Commission erred in finding that no public necessity existed for the proposed service. We disagree with appellant's premise and conclusion.

It is true that the only evidence on the question of public necessity was that given by appellant's expert witness, an economist

who had studied the matter and gave in evidence his opinion that such a necessity did indeed exist in the ten counties. He gave other evidence demonstrating the basis for his opinion. The evidence was struck, however, on motion of an opposing party and appellant has not directly and clearly complained of that action by the Commission. Instead, appellant argues that the testimony of the economist was probative and "properly admitted" and the Commission erred when it "failed to consider [such testimony] because the expert was not a shipper."

We must first say that we do not interpret the Commission's order in the manner necessary to appellant's argument. We believe the word "devoid" has reference to the fact that the opinion testimony had been struck, leaving the corpus of the evidence empty of anything that had probative force on the question of public necessity, no shippers, *for example*, having appeared to testify on that point. We do not conceive that the Commission acted on an inflexible rule of policy or procedure, *ad hoc* or otherwise, to the effect that public necessity may *only* be established by the testimony of shippers who might utilize the proposed new service. We therefore overrule appellant's point of error because it depends entirely upon that incorrect imputation.

We hesitate, however, to conclude our opinion on the foregoing basis alone. The Commission's order *is* unclear on the point in controversy and it might reasonably be interpreted to mean that the Commission was of the opinion that the economist's opinion testimony, standing alone, did not amount to more than a scintilla for it was insufficiently probative to establish a prima facie case on the issue of public necessity. Similarly, portions of appellant's motion for rehearing in the Commission and its brief on appeal might be interpreted to be a complaint of the prejudice resulting from the striking of the expert's testimony coupled with the ruling that it lacked sufficient probative force to establish a prima facie case. We will consider the matter further in the interest of justice.

In administrative proceedings, the opinion testimony of an expert witness does not establish any material fact as a matter of law. *Board of Firemen's Relief & Retirement F. Tr. v. Mark,* 150 Tex. 433, 242 S.W.2d 181, 185 (1951). If we consider that the economist's testimony correctly formed part of the corpus of the evidence, this does not *necessarily* mean that the Commission was obliged to assign *any* weight to it, much less controlling weight. The reviewability of uncontradicted and unimpeached testimony of this kind is subject to various subtle and complex distinctions. *See* Jaffe, *Judicial Review of Administrative Action,* 605–10 (1965); Davis, *Administrative Law Text,* § 29.06 at 534–35 (1972). In the present case, however, the expert's opinion "carries its own death wound" in the vivid phrase found in *NLRB v. Pittsburg Steamship Company,* 337 U.S. 656, 660, 69 S.Ct. 1283, 1285, 93 L.Ed. 1602 (1949). *Even though* his testimony was the *sole* evidence in the case concerning the matter of public necessity, because of a patent defect in that evidence the trier of fact was not deprived of its ordinary freedom to reject the evidence as being without credibility on the point in litigation—the public necessity for the proposed service.

If we interpret correctly the economist's testimony, his opinion that there existed a public necessity for the proposed service rested exclusively upon his belief that competition is a better regulator in the field of specialized motor carriers than in the field of general-commodity carriers; and, in consequence, a relatively greater freedom of "entry and exit of firms" is more in the "public interest" insofar as specialized-motor-carrier regulation is concerned. In other words, the economist's opinion about public necessity really amounted solely to an opinion about what regulatory philosophy was in the public interest; and, it did not even *purport* to reflect an actual state of unmet requirements for hydrocarbon-shipping service in the ten counties in question. As to this need, there was no evidence. In any event, the economist did not suggest that *this* factor had entered into his opinion at all.

We therefore believe the Commission reasonably could assign no weight to the economist's testimony under what *the agency* regarded as the proper regulatory philosophy. It goes without saying, of course, that the matter of setting the official policy of the State lies within the discretion of the Commission under the applicable statutes. We therefore overrule appellant's second point of error on this alternative ground.

Finding no error as assigned by appellant, we affirm the judgment below.