**CITIES OF PORT ARTHUR, PORT NECHES, NEDERLAND AND GROVES, Appellants,**

v.

**RAILROAD COMMISSION OF TEXAS and Southern Union Gas Company, a Division of Southern Union Company; and Southern Union Company, Appellees.**

**No. 3–93–349–CV.**

Court of Appeals of Texas, Austin.

June 1, 1994.

Rehearing Overruled Dec. 7, 1994.

*Id.,* 807 S.W.2d at 332.

Steven A. Porter, Butler, Porter, Gay & Day, Austin, for appellant.

Dan Morales, Atty. Gen., Douglas Fraser, Asst. Atty. Gen., Austin, for Railroad Com'n of Texas.

John F. Williams, Clark, Thomas & Winters, Austin, for Southern Union Gas Co.

Before POWERS, JONES and KIDD, JJ.

POWERS, Justice.

The Cities of Port Arthur, Port Neches, Nederland, and Groves sued the Texas Railroad Commission in district court for judicial

review of the agency's final order in a contested case decided under the Gas Utility Regulatory Act, Tex.Rev.Civ.Stat.Ann. art. 1446e (West Supp.1994) (GURA). *See* GURA § 8.01. The agency order fixed the gas-utility rates of Southern Union Gas Company, which intervened in the district-court suit. After trial, the district court sustained the Commission's final order and the Cities appealed to this Court. *See* Administrative Procedure Act ("APA"), Tex.Gov't Code Ann. § 2001.901 (West 1994).[1] We will reverse the agency order and the trial-court judgment, ordering that the cause be remanded to the Commission.

## THE CONTROVERSY

The Cities fixed the Company's gas-utility rates in municipal-rate proceedings as provided in sections 3.01 through 3.04 of GURA, following which the Company appealed to the Commission for the de novo rate proceedings authorized by section 3.05(a) of GURA. The Commission consolidated the separate proceedings and, after hearings in October and November 1991, rendered a final order fixing the Company's new rates. The Cities complain of the final order in the particulars noted below.

## COST REIMBURSEMENT

In GURA section 3.03(a), the legislature provided as follows:

The governing body of any municipality participating in or conducting ratemaking proceedings shall have the right to select and engage rate consultants, accountants, auditors, attorneys, engineers, or any combination thereof, to conduct investigations, present evidence, advise and represent the governing body, and assist with litigation or gas utility ratemaking proceedings before any regulatory authority or in court. *The gas utility engaged in those proceedings shall be required to reimburse the governing body for the reasonable costs of those services to the extent found reasonable by the applicable regulatory authority.*

(Emphasis added). In the Commission proceeding, the Cities claimed a right of reimbursement under the statute for sums paid and to be paid to the following: (1) the law firm of Butler, Porter & Gay for work done in connection with the Commission proceeding; (2) the consulting firm of Diversified Utility Consultants, Inc., for work done in the municipal-rate proceedings and in connection with the Commission proceeding; and (3) the Cities' respective city attorneys for work done in the municipal-rate proceedings and in connection with the Commission proceeding. The Commission, in its final order, found only a part of the costs reasonable and allowed reimbursement for that part alone. The Cities contend in points of error one through four that the Commission's action in refusing to order reimbursement for the remainder was arbitrary, not supported by substantial evidence, and thus a violation of GURA section 3.03(a). *See* APA § 2001.174(2)(A), (E), (F).

A Commission rule placed upon the Cities a burden to prove the reasonableness of their rate-case expenses in light of the factors specified in the rule, which provides as follows:

§ 7.57. **Allowable Rate Case Expenses**
In any rate proceeding, any utility and/or municipality claiming reimbursement for its rate case expenses pursuant to Texas Civil Statutes, Article 1446c, shall have the burden to prove the reasonableness of such rate case expenses by a preponderance of the evidence. Each shall detail and itemize all rate case expenses and allocations and shall, in addition, provide evidence showing the reasonableness of the cost of all professional services, including, but not limited to, the amount of work done; the time and labor required to accomplish the work; the nature, extent, and difficulty of the work done; the originality of the work; the charges by others for work of the same or similar nature;

---

1. All citations in this opinion are to the current Administrative Procedure Act rather than the former Administrative Procedure and Texas Register Act because the recent codification did not substantively change the law. Act of May 7, 1993, 73d Leg., R.S., ch. 268, § 47, 1993 Tex. Gen.Laws 583, 986; Administrative Procedure Act, Tex.Gov't Code Ann. §§ 2001.001–.902 (West 1994).

and any other factors taken into account in setting the amount of the compensation. In determining the reasonableness of the rate case expenses, the commission will consider all relevant factors including, but not limited to, those set out previously, and will also consider whether the request for a rate change was warranted, whether there was duplication of services or testimony, whether the work was relevant and reasonably necessary to the proceeding, and whether the complexity and expense of the work was commensurate with both the complexity of the issues in the proceeding and the amount of the increase sought as well as the amount of any increase granted.

16 Tex.Admin.Code § 7.57 (1993).

### *Butler, Porter & Gay*

The Cities jointly engaged Butler, Porter & Gay as their counsel in the de novo proceeding in the Commission. These attorneys filed in the Commission affidavits showing the Cities had incurred and would incur a total of $80,000 in costs for the attorneys' work. The affidavits declared the sums were reasonable and necessary based on the affiants' knowledge and expertise and the matters referred to in Rule 7.57. The costs incurred by the Cities before December 10, 1991, were the verified debts the Cities had in fact incurred as a result of the attorneys' billings before that date. The invoices state in detail the nature of the work done each day and the amount of time it required. When combined, the invoices reflect the following past expenses and anticipated future expenses during the progress of the case:

Attorneys' Fees for Past Work:

| | | |
|---|---|---|
| Mr. Don Butler | 139.00 hours at $150/hour | $20,850.00 |
| Mr. Geoffrey Gay | 3.20 hours at $150/hour | 480.00 |
| Mr. Steve Porter | 232.25 hours at $150/hour | 34,837.50 |
| Estimated Attorneys' Fees for Work after December 10, 1991: | 148.31 hours at $150/hour | 22,246.19 |
| Case Expenses: | | 1,586.31 |
| Total | 522.76 hours | $80,000.00 |

The Commission found unnecessary a $400 charge resulting from Mr. Butler's work relating to the Cities' motion for reconsideration and rehearing; and the Commission found the sum of $22,246.19, estimated for future work in the case, was "too speculative and [it is] therefore reduced to $3,000," which the Commission reduced further by almost two-thirds to $1,100 because "the time charged [sic] is excessive for the issues involved in this proceeding." (The "charge" for future attorneys' fees in the case was an estimate; it had not been presented for payment.) The Commission's findings relative to the $3,000 and the $22,246.19 appear to be superfluous, however, because in a subsequent finding the Commission determined as follows:

In addition to the allowance of $1,586.31 in expenses, it is reasonable to allow $39,450 for 263 hours charged by the law firm of Butler, Porter & Gay rather than $78,413.69 for approximately 522.76 hours, the amount originally requested. This $39,450 *includes* the reduction of Butler, Porter and Gay's charges for future estimated expenses.

(Emphasis added). This finding allows the Cities reimbursement for all the attorneys' expenses and $39,450 in attorneys' fees, while refusing the Cities reimbursement for the remainder of such costs. Nothing in the Commission's final order explains further why or how the Commission arrived at its determination that only $39,450 of the attorneys' fees were reasonable. We are faced then with the stark proposition that the Commission determined as it did based simply on the fact that it believed only 263 hours of attorneys' work and resulting costs of $29,450 were reasonable for the case. "We may consider only what was written by the Commission in its order, and we must measure its statutory sufficiency by what it says." *Morgan Drive Away, Inc. v. Railroad Comm'n*, 498 S.W.2d 147, 152 (Tex.1973).

The Cities contend they proved their costs for attorneys' fees because the attorneys' supporting affidavits were uncontradicted, unimpeached, free of any inherent improbability, and not internally ambiguous or contradictory. The Commission and the Company rejoin that the Commissioners were the judges of the credibility of the witnesses and the weight to be assigned their affidavit testimony; the Commissioners were therefore free to reject such testimony in whole or in part and decide as they did based on their own expertise and examination of the record and what it showed as to the complexity and

difficulty of the relevant issues and the effort and time reasonably required of the attorneys.

The issues raised for a reviewing court, when an agency rejects uncontradicted evidence, are subtle and complex as mentioned in *Fuel Distributors, Inc. v. Railroad Commission*, 727 S.W.2d 56, 61 (Tex.App.—Austin 1987, writ ref'd n.r.e.). There we held the Commission might rationally have rejected the uncontradicted opinion testimony of an expert witness because it confessedly rested, at bottom, on his assumption about what a proper regulatory philosophy should be—a philosophy not shared by the Commission which had exclusive authority to decide what the State's official policy would be.

In the present case the Commissioners simply differed with the conclusions contained in the affidavits as to what amount of work was reasonable. The attorneys concluded in their affidavit that 522.76 hours of work were reasonable and necessary in light of the nature of the case and the relevant issues; the Commissioners reached a different conclusion, inferring that only 263 hours were reasonably required. This was a secondary inference that could have been derived from no evidence save the affidavits (there was no other evidence regarding the matter). The Commissioners did accept the attorneys' conclusions, stated in their affidavits, that fees calculated on the basis of $150 per hour were reasonable.

■ There is no doubt that the Commissioners possessed the power to draw conclusory inferences different from the conclusions expressed in the affidavits. "'One of the purposes which lead to the creation of [administrative agencies] is to have decisions based upon evidential facts ... made by experienced officials with an adequate appreciation of the complexities of the subject which is entrusted to their administration.'" *Radio Officers' Union v. National Labor Relations Bd.*, 347 U.S. 17, 49, 74 S.Ct. 323, 340, 98 L.Ed. 455 (1954) (citation omitted). And a reviewing court may not set aside the Commissioners' chosen inference on the ground that the court believes another inference more reasonable under the facts proved. The weight to be attributed to the undisput-

ed facts in the present case and the inferences to be drawn from those facts, are for the Commission to determine, not the courts. *Corn Prods. Ref. Co. v. Federal Trade Comm'n*, 324 U.S. 726, 739, 65 S.Ct. 961, 967, 89 L.Ed. 1320 (1945). This does not mean, however, that the inferences drawn by an agency from undisputed facts are entirely immune from judicial review. "The test in reviewing an agency's inferences is reasonableness, not rightness, for the reviewing court determines whether the conclusions 'reasonably may be based upon the facts proven.'" 2 Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 11.2, at 191–92 (3d ed. 1994) (quoting *Radio Officers'*, 347 U.S. at 49, 74 S.Ct. at 340). Could the Commission, from the facts proved in the case by the undisputed affidavits, reasonably conclude that only 263 hours of work were reasonably required? *See Radio Officers'*, 347 U.S. at 49–50, 74 S.Ct. at 340–41. We will apply that test to the present record.

■ The affidavits showed without dispute that the Cities had actually incurred as costs all but the attorneys' fees estimated for future work in the case. The past and future costs were based on expert opinion explained in detail in the affidavits. The affidavits contain nothing that is inherently improbable, contradictory, or self-defeating. The only facts relevant to the issue were the undisputed facts recited in the affidavits. We cannot say, as we did in *Fuel Distributors*, that the uncontradicted, unimpeached expert opinion "carries its own death wound." *Fuel Distribs.*, 727 S.W.2d at 61 (citation omitted). The Commission credited the affidavits in large part, and differed only in the agency's drawing a different conclusion as to the number of hours of attorneys' work that were reasonable. The Commission not only rejected the attorneys' conclusion that 522.76 hours of past and future work were reasonable and necessary, the Commission *found* that 263 hours for past and future work *were* reasonable. And the agency decided the issue based on that finding. Presumably this finding was based on the Commissioners' expertise and evaluation of the whole record. But if there is to be judicial review at all, as to the reasonableness of the Commissioners'

determination, then they were obliged in the present circumstances to place in the record some explanation or reason upon which the reasonableness of their action might be judged in light of the whole record. They did not do so. In the absence of such an explanation or reason, the Commission's inference that only 263 hours of the 522.76 hours were reasonable is not a conclusion "reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." APA § 2001.174(2)(E); *see Public Util. Comm'n v. Gulf States Utils. Co.,* 809 S.W.2d 201, 212 (Tex.1991); *Texas Health Facilities Comm'n v. Nueces County Hosp. Dist.,* 581 S.W.2d 768, 769–70 (Tex.Civ.App.—Austin 1979, no writ); *White Glove Bldg. Maintenance, Inc. v. Brennan,* 518 F.2d 1271, 1274 (9th Cir. 1975); *National Labor Relations Bd. v. Cutting, Inc.,* 701 F.2d 659, 663 (7th Cir.1983); Davis & Pierce, *supra,* at 189–90. *See also West Ohio Gas Co. v. Public Utils. Comm'n,* 294 U.S. 63, 68–69, 55 S.Ct. 316, 319, 79 L.Ed. 761 (1935) in which the Court stated as follows:

> To make [judicial] review adequate the record must exhibit in some way the facts relied upon by the court to repel unimpeached evidence.... If that were not so, a complainant would be helpless, for the inference would always be possible that the ... Commission had drawn upon undisclosed sources of information unavailable to others. A hearing is not judicial, at least in any adequate sense, unless the evidence can be known.

We hold accordingly.

### Diversified Utility Consults, Inc.

These consultants assisted the Cities both in the Commission and in the earlier municipal-rate proceedings. They filed in the Commission affidavits detailing the sums they had charged the Cities for their work and the sums they estimated would be required to compensate them for work done after the date of the affidavits. The consultants explained in their affidavits, in addition, their conclusion that the past and future charges were necessary and reasonable in terms of Rule 7.57. The charges may be summarized as follows:

| | | |
|---|---|---|
| Mr. Jack Pous | 193.00 hours at $95/hour | $ 18,335.00 |
| Mr. Dal Lawton | 76.00 hours at $95/hour | 7,220.00 |
| Mr. Ken Bagley | 561.00 hours at $75/hour | 42,075.00 |
| Mr. Richard Eklund | 306.50 hours at $75/hour | 22,987.50 |
| Mr. John Baker | 209.00 hours at $75/hour | 15,675.00 |
| Analysts | 79.75 hours at $45/hour | 3,588.75 |
| Clerical Staff | 98.50 hours at $25/hour | 2,462.50 |
| Estimated Future Work | | 4,000.00 |
| Expenses | | 5,995.64 |
| Total | | $122,339.39 |

The Commission found the Cities had "not shown by a preponderance of the evidence that $4,000 [for estimated future work] is reasonable and, therefore, it is reduced to $300. In addition, because the time charged is excessive for the issues involved in this proceeding, the $300 is further reduced by one-third [to $100.00]." Moreover, the Commission disallowed the sum of $2,462.50 "for ... the Cities' secretarial and clerical support," stating no basis for such action. Concerning the past work done by Mr. Eklund, the Commission declared as follows:

> The Cities have not shown by a preponderance of the evidence that $15,487.50 for 206.5 hours of work performed by Richard Eklund was necessary and relevant to the proceeding and it is therefore reduced to $7,500. In addition, because the time charged is excessive for the issues involved in this proceeding, the amount of $7,500 is further reduced by one-third [to $2,500.00].

It appears the foregoing determinations were rendered superfluous because the Commission found as follows in its final order:

> In addition to the allowance of $5,995.64 in expenses, it is reasonable to allow the recovery of $63,185 rather than the $113,881.25, the amount originally requested for the Cities' consultant fees. This $63,185 *includes* the reduction of Mr. Eklund's charges and the reduction of future estimated expenses for the Cities' consultants.

In the end, it appears the Commission allowed the Cities to recoup the consultants' expenses of $5,995.64 together with $63,185 in past and future consultant fees, while disallowing the balance claimed as a result of the consultants' work.

In this instance as well, the affidavits supporting the costs claimed by the Cities were uncontradicted and unimpeached, based on personal knowledge and expertise. We find in them nothing inherently improbable or

contradictory, and no other basis in the record upon which the Commissioners might have rejected them to the extent they did. The record demonstrates that the Commissioners simply disagreed with the amount of work that was reasonable in the case and substituted their own conclusion ($63,185.00) for that contained in the affidavits ($113,881.25). Presumably the Commissioners' conclusion was based on the affidavits viewed in light of the Commissioners' expertise and the whole record. Nevertheless, the Commissioners omitted to state any basis, reason, or explanation upon which their conclusion rested. The record reflects only that the Cities' claim for reimbursement was opaquely reduced, in the face of undisputed evidence, to an amount the Commissioners thought reasonable. For the reasons given previously in our discussion of the Cities' cost for attorneys' fees, we believe the Commissioners' conclusory inferences are not supported by substantial evidence in light of the record as a whole.

### City-Attorney Costs

The Cities paid their respective city attorneys for work done in the 1991 municipal-rate proceedings. At the commencement of the de novo proceeding in the Commission, these attorneys filed in the Commission their affidavits dated October 15 and 16, 1991. The affidavit testimony was not contradicted or impeached. The testimony demonstrates that the Cities paid the attorneys the aggregate sum of $8,218.25 for work done before the Commission proceeding began, basically their work in the municipal-rate proceedings.[2] The attorneys' invoices to the Cities were verified and affixed to the affidavits. These invoices and affidavits support the reasonableness and necessity of the $8,218.25 in costs incurred by the Cities.

In addition, the three attorneys' affidavits set forth their estimates of what their future work in the case would cost their respective municipal clients after October 15 and 16, 1991, the dates of the affidavits. The aggregate amount of these estimates of future city

expenses was $2,800. The city attorneys did not describe in their affidavits the amount of such future work or its nature. In almost the same language, each affidavit stated as follows:

In addition, it is anticipated that expenses in the additional amount of approximately [$1,500.00, $500.00, and $800.00] will be incurred in the future by the [City of Nederland, Groves, and Port Neches] in connection with this matter. Such amount would be based on the same hourly charges as indicated herein.

The Commission allowed the Cities to recoup from the Company the sums paid under the three attorneys' invoices for past work, a total of $8,218.25. The Commission refused recoupment of the amount of future expense estimated by the three attorneys in their affidavits of October 15 and 16, 1991, a combined amount of $2,800, representing an aggregate of twenty-five hours of work for the three attorneys.

The proposal for decision contains the observation that the three city attorneys "did not describe" in their affidavits "what type of work would be necessary in the future;" and for that reason the examiners found the future expenses of $2,800 "too speculative." And, in the words of proposed finding of fact 70, the claimed future expenses "are unreasonable because they are speculative." Although the record is not entirely clear on the point, the Commission apparently adopted in its final order all the findings of fact and conclusions of law set out in the proposal for decision, save as these were amended or substitutions made for them in the final order itself. We cannot find that the Commission's final order either amended finding of fact 70 or ordered a substitute for it. Apparently, then, the Commission adopted the reasoning and grounds reflected in the proposed finding of fact 70.

■ In this instance, we believe the whole record demonstrates a reasonable basis for the Commission's action in refusing to allow

---

**2.** The City of Port Arthur filed no affidavit in support of the amount claimed for its city attorney. Thus, the Commission could properly deny for want of evidence any claim for reimburse-

ment by the municipality. For the purpose of this section of our opinion, the City of Port Arthur is excluded from the discussion.

the Cities to recoup as reasonable costs the $2,800.00 estimated by the city attorneys as their future charges for work done in the case after the dates of their affidavits (October 15 and 16, 1991). Unlike the affidavits filed in support of the costs incurred by reason of the work of Butler, Porter & Gay and Diversified Utility Consultants, Inc., the affidavits filed by the city attorneys were never supplemented after the initial filing of the case in the Commission. It is implicit in the other affidavits, filed in support of the costs associated with Butler, Porter & Gay and Diversified Utility Consultants, that the city attorneys did, indeed, work on the case during its progress in the Commission. But this work by the city attorneys was never quantified when it easily could have been toward the end of the Commission proceeding. Thus, the city attorneys' estimate was inherently speculative when it need not have been and the Commission could reasonably reject it on that ground in light of the record as a whole. This is precisely the action taken by the Commission and we see no error in that regard. We therefore sustain the Cities' points of error one through four, except as to the costs associated with the Cities' respective city attorneys.

### TEMPORARY RATES

On filing its appeal to the Commission, the Company requested that the Commission set aside the rates fixed by the Cities in the municipal-rate proceedings. Within a few days, the Commission granted the request without holding an evidentiary hearing, conditioned upon the Company's filing a bond to secure against any deficit resulting from the rates finally fixed by the Commission and the rates the Company was permitted to charge *pendente lite*. The Company filed the requisite bond and charged its original rates on a temporary or interlocutory basis.

■ The Cities contend the terms of article 6058 of the Revised Civil Statutes prohibited the Commission's taking such action without an evidentiary hearing. The statute provides as follows:

When a city government has ordered any *existing rate reduced*, the gas utility affected by such order may appeal to the Commission by filing with it on such terms and conditions as the Commission may direct, a *petition and bond* to review the decision, regulation, ordinance, or order of the city, town or municipality. Upon such appeal being taken *the Commission shall set a hearing* and may make such order or decision in regard to the matter involved therein as it may deem just and reasonable. *The Commission shall hear such appeal de novo.*

Tex.Rev.Civ.Stat.Ann. art. 6058 (West 1962) (emphasis added).

We believe the Company and the Commission correctly interpret the statute when they say the second sentence requires a *final* hearing, and the first sentence refers to the setting of temporary rates. *See Arkansas Louisiana Gas Co. v. Railroad Comm'n,* 586 S.W.2d 643, 646 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). The Cities contend only that the statute unambiguously required an evidentiary hearing before the Company might be allowed to implement the temporary rates. We hold that is not a correct interpretation of the statute. The Cities do not complain that the Commission's action, taken without a hearing and over their objection, was an abuse of discretion that prejudiced their substantial rights in the circumstances existing. Had they made such a complaint, a hearing might have been required on a ground apart from the statute.

■ The Cities imply that the Commission's actions violated their due-process rights. Assuming that a municipality may make that claim, we reject it because the demands of due process of law do not require a hearing at the initial stage, or at any particular point in an administrative proceeding, so long as a hearing is held before the final order becomes effective. *See Opp Cotton Mills, Inc. v. Administrator of Wage & Hour Div. of Dep't of Labor,* 312 U.S. 126, 152–53, 61 S.Ct. 524, 535–36, 85 L.Ed. 624 (1941). This also is the meaning implicit in APA section 2001.051. *See* 1 Frank E. Cooper, *State Administrative Law* at 287 (1965).

For the reasons given, we reverse the Commission's final order and the district-court judgment; and we remand the cause to

the district court with instructions that it be remanded to the Commission for proceedings not inconsistent with our opinion.