# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00302-CV

**The Railroad Commission of Texas; CenterPoint Energy Resources Corp., d/b/a CenterPoint Energy Entex; and CenterPoint Energy Texas Gas, Appellants**

**v.**

**Gulf Coast Coalition of Cities, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-12-001695, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Gulf Coast Coalition of Cities sued for judicial review of the final order issued by appellant Railroad Commission of Texas in a cost-of-service-adjustment proceeding related to rates charged by appellants CenterPoint Energy Resources Corp., d/b/a CenterPoint Energy Entex, and CenterPoint Energy Texas Gas (collectively, "CenterPoint"). *See* Tex. Util. Code §§ 103.024, 105.001; Tex. Gov't Code §§ 2001.171, .176. The district court concluded that the Commission was within its authority to disallow the Coalition's rate-case expenses,[1] but the court reversed and remanded the issue of the amount of the disallowance to the Commission for further proceedings, and it affirmed the Commission's order in all other respects. On appeal to this Court,

---

[1] "Rate-case expenses" are the reasonable and necessary costs incurred in litigation before the Commission that the parties may recover from ratepayers. *See City of El Paso v. Public Util. Comm'n of Tex.*, 916 S.W.2d 515, 518-19 (Tex. App.—Austin 1995, writ dism'd by agr.).

the Commission and CenterPoint contend that the Commission acted within its discretion to disallow expenses for duplicative issues that were irrelevant and unnecessary and that substantial evidence supports the Commission's decision to disallow the Coalition's rate-case expenses in the amount of $40,772.03. We will reverse the district court's judgment on the rate-case-expense issue and render judgment reinstating the Commission's full final order.[2]

## BACKGROUND

The cities that are part of the Coalition are municipalities that exercise original jurisdiction over the rates and charges of retail gas utilities, including CenterPoint. Tex. Util. Code § 103.001. The Coalition and CenterPoint agreed in 2008 to the Cost of Service Adjustment tariff ("COSA-2") that requires CenterPoint to annually propose adjustments to its Texas Coast Division customer charges for natural-gas distribution service, calculated according to the COSA-2 tariff. CenterPoint proposes those adjustments by making a filing with each regulatory authority having original jurisdiction, which includes both the Coalition cities and the Commission, which exercises exclusive original jurisdiction over gas-utility rates and services for areas outside a municipality and for areas inside a municipality that surrenders its jurisdiction to the Commission, *see id.* § 102.001(a).

This case arises out of CenterPoint's 2011 COSA-2 filings. The Coalition cities and the Commission independently reviewed the same COSA-2 filing package submitted by CenterPoint

---

[2] No party has challenged the district court's order affirming the remainder of the Commission's order, and therefore, we express no opinion on the remainder of the final order, as it is not before this Court.

2

at the end of April 2011. The Commission docketed CenterPoint's COSA-2 filing for the municipalities that had ceded jurisdiction to the Commission as Gas Utilities Docket No. 10075. After the Commission completed its regulatory review, it and CenterPoint reached an agreement on certain adjustments to the rates requested by CenterPoint in its filing. CenterPoint had originally proposed a system-wide increase in revenue of $914,910; after the agreed adjustments, the system-wide increase in revenue was $853,506. The new COSA-2 rate became effective on August 1, 2011 for the areas under the Commission's original jurisdiction.

After the Coalition cities each reviewed CenterPoint's filing, they denied CenterPoint's requested COSA-2 adjustment. On August 10, 2011, CenterPoint filed a petition for review with the Commission, which has appellate jurisdiction over the orders and ordinances of municipalities exercising original jurisdiction. *See id.* § 101.001(b). The Commission docketed the appeal as Gas Utilities Docket No. 10106. Docket No. 10106 is the docket from which this appeal originated.

CenterPoint included a revised COSA-2 adjustment request with its petition for review in Docket No. 10106, following discussions with the Commission's staff. The revised request incorporated the changes already approved by the Commission in Docket No. 10075. *See id.* § 103.005 (allowing utility to adjust its request on appeal to reflect known changes and conditions that are measurable with reasonable accuracy). The parties agreed to a procedural schedule that was approved by the hearing examiners and that included the opportunity to conduct discovery. A hearing on the merits was held for the purpose of submitting stipulated evidence. The Commission issued its final order in Docket No. 10106 in March 2012. The Commission approved CenterPoint's

3

requested COSA-2 adjustments, which it found were consistent with the adjustments approved in Docket No. 10075.

In its final order, the Commission also awarded rate-case expenses to both CenterPoint and the Coalition. Among other findings, the Commission reduced the Coalition's requested rate-case expenses based on its determination that 40% of the adjustments to CenterPoint's request proposed by the Coalition were "irrelevant" and "unnecessary." *See* 16 Tex. Admin. Code § 7.5530(a), (b) (2015) (R.R. Comm'n of Tex., Allowable Rate Case Expenses) (requiring Commission to consider factors relevant to reasonableness of rate-case expenses, including "whether the work was relevant and reasonably necessary to the proceeding").[3] The Commission found that the Coalition had presented ten issues that it contended required an adjustment to CenterPoint's rate request and that four of those issues were unnecessary because CenterPoint's cost-of-service calculation no longer included costs associated with those issues. When determining how to calculate the unnecessary expenses, the Commission used three different methodologies, all of which indicated that approximately 40% of the time spent by the Coalition's attorneys and consultants was dedicated to issues that were no longer relevant to the proceeding. The Coalition's actual expenses for the appeal to the Commission were $60,476.18, and 40% of that expense is $24,190.47. In addition, CenterPoint estimated that the amount of legal services it incurred in litigating the four irrelevant issues was approximately 20%. CenterPoint's actual expenses for the appeal to the Commission were $82,907.80, and 20% of that expense is $16,581.56. Accordingly, the

---

[3] Although Rule 7.5530 was amended in 2015, the portions of the Rule relevant to this appeal, subsections (a) and (b), did not change. Accordingly, we cite to the current version of the Rule for convenience.

4

Commission reduced the Coalition's rate-case expenses by $40,772.03, the total of $24,190.47 plus $16,581.56.

The Coalition appealed the Commission's final order to the district court, challenging the Commission's disallowance of rate-case expenses in the amount of $40,772.03, among other issues. The district court affirmed the Commission's final order on all issues, except the rate-case-expense issue. The district court reversed the order in part because it found that the Commission was within its authority to disallow the Coalition's rate-case expenses, but that the issue of the amount of the disallowance, if any, should be remanded to the Commission for further proceedings. This appeal by the Commission and CenterPoint followed.

**ANALYSIS**

The Commission and CenterPoint both challenge the district court's judgment reversing and remanding the Commission's order on the rate-case-expense issue. They assert that (1) the Commission acted within its discretion when it reduced the Coalition's rate-case expenses based on the Commission's determination that the expenses were related to irrelevant and unnecessary issues and (2) substantial evidence supports the Commission's decision to reduce the Coalition's rate-case expenses and the amount by which it reduced those expenses. In response, the Coalition contends that the Commission's reduction of its rate-case expenses was arbitrary and capricious because it was based on Docket No. 10075, a proceeding that the Coalition was not permitted to participate in, and from which the Coalition was unable to ascertain the necessary facts to avoid the reduction in expenses. The Coalition does not assert that the Commission's order is not supported by substantial evidence; instead, it contends that even if an agency's order is supported

5

by substantial evidence, if the agency acts completely unreasonably, its decision is arbitrary and capricious. In addition, the Coalition contends that the Commission also acted arbitrarily and capriciously by applying a new standard for calculating the reduction of rate-case expenses without prior notice to the parties or any explanation of its departure from past practices.

**Standard of review**

In an administrative appeal governed by the substantial-evidence rule, like this one, a court shall reverse the state agency's decision if substantial rights of the appellant at the agency level have been prejudiced because the agency has committed one of the errors listed in Section 2001.174(2)(A)-(F).[4] *See* Tex. Gov't Code § 2001.174 (establishing standard for review under substantial-evidence rule); Tex. Util. Code § 105.001 (providing that any party to proceeding before Commission is entitled to judicial review under substantial-evidence rule). The list of potential reversible errors includes administrative decisions that are not reasonably supported by substantial evidence or that are arbitrary and capricious or characterized by an abuse of discretion. Tex. Gov't Code § 2001.174(2)(E), (F).

An agency acts arbitrarily and capriciously when it: (1) denies a litigant due process and prejudices its substantial rights; (2) wholly adopts the record from another case involving

---

[4] Whether the agency's order satisfies the substantial-evidence standard is a question of law. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). Consequently, the district court's judgment is not entitled to deference on appeal, *see Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam), and the focus of this Court's review on appeal from the district court's judgment is on the agency decision, not the district court's judgment, *see Heritage on the San Gabriel Homeowners Ass'n v. Texas Comm'n on Envtl. Quality*, 393 S.W.3d 417, 424 (Tex. App.—Austin 2012, pet. denied).

different parties, fails to make findings of fact, and bases its decision on its findings made in the other case; or (3) improperly bases its decision on non-statutory criteria. *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 454 (Tex. 1984) (analyzing cases). In addition, an agency abuses its discretion or its decision is arbitrary "if the agency: (1) failed to consider a factor that the legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result." *City of El Paso v. Public Util. Comm'n of Tex.*, 883 S.W.2d 179, 184 (Tex. 1994) (citing *Gerst v. Nixon*, 411 S.W.2d 350, 360 n.8 (Tex. 1966)). An agency's decision is also arbitrary if it is made without regard for the facts, relies on fact findings that are not supported by any evidence, or lacks a rational connection between the facts and the decision. *See City of Waco v. Texas Comm'n on Envtl. Quality*, 346 S.W.3d 781, 819-20 (Tex. App.—Austin 2011) (analyzing cases), *rev'd on other grounds*, 413 S.W.3d 409 (Tex. 2013). In other words, we must remand for arbitrariness if we conclude that the agency has not "'genuinely engaged in reasoned decision-making.'" *Id.* (quoting *Starr Cty. v. Starr Indus. Servs., Inc.*, 584 S.W.2d 352, 356 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.)).

We review the agency's legal conclusions for errors of law and its factual findings for support by substantial evidence. *Heat Energy Advanced Tech., Inc. v. West Dallas Coal. for Envtl. Justice*, 962 S.W.2d 288, 294-95 (Tex. App.—Austin 1998, pet. denied). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Lauderdale v. Texas Dep't of Agric.*, 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no writ) (quoting *Pierce*

7

*v. Underwood*, 487 U.S. 552, 564-65 (1988)) (internal quotation marks omitted). We consider the reliable and probative evidence in the record as a whole when testing an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence. *See Charter Med.*, 665 S.W.2d at 452. We presume that the Commission's order is supported by substantial evidence, and the Coalition bears the burden of proving otherwise. *See id.* at 453. The burden is a heavy one—even a showing that the evidence preponderates against the agency's decision will not be enough to overcome it, if there is some reasonable basis in the record for the action taken by the agency. *See id.* at 452. We may not substitute our judgment for the agency's judgment "on the weight of the evidence on questions committed to agency discretion." Tex. Gov't Code § 2001.174. Resolving factual conflicts and ambiguities is the agency's function, and the substantial-evidence rule protects that function. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). Our ultimate concern is the reasonableness of the agency's order, not its correctness. *Id.*

**The Commission's discretion to determine reasonableness of rate-case expenses**

We first consider the scope of the Commission's discretion to determine the reasonableness of litigants' rate-case expenses. "The Commission has broad discretion to determine recovery of expenses in a ratemaking proceeding." *City of Port Neches v. Railroad Comm'n of Tex.*, 212 S.W.3d 565, 579 (Tex. App.—Austin 2006, no pet.). The Texas Utilities Code provides that the gas utility "shall reimburse the governing body of the municipality for the reasonable cost of the services of a person engaged [to provide services related to a ratemaking proceeding, including attorneys] *to the extent the applicable regulatory authority determines reasonable*." Tex. Util. Code

8

§ 103.022(b) (emphasis added). In addition, the Commission has the authority to adopt reasonable rules "for including and excluding certain expenses in computing the rates to be established." *Id.* § 104.055(d).

The Commission has promulgated a rule that addresses its evaluation of rate-case expenses. Section 7.5530 provides:

> (a) In any rate proceeding, ***any utility and/or municipality*** claiming reimbursement for its rate case expenses pursuant to Texas Utilities Code, §103.022(b), ***shall have the burden to prove the reasonableness of such rate case expenses by a preponderance of the evidence***. Each gas utility and/or municipality shall detail and itemize all rate case expenses and allocations and shall provide evidence showing the reasonableness of the cost of all professional services, including but not limited to:
>
> > (1) the amount of work done;
> > (2) the time and labor required to accomplish the work;
> > (3) the nature, extent, and difficulty of the work done;
> > (4) the originality of the work;
> > (5) the charges by others for work of the same or similar nature; and
> > (6) any other factors taken into account in setting the amount of the compensation.
>
> (b) In determining the reasonableness of the rate case expenses, ***the Commission shall consider all relevant factors including*** but not limited to those set out previously, and shall also consider whether the request for a rate change was warranted, whether there was duplication of services or testimony, ***whether the work was relevant and reasonably necessary to the proceeding,*** and whether the complexity and expense of the work was commensurate with both the complexity of the issues in the proceeding and the amount of the increase sought as well as the amount of any increase granted.

16 Tex. Admin. Code § 7.5530(a), (b) (2015) (R.R. Comm'n of Tex., Allowable Rate Case Expenses) (emphases added). The Commission is "the sole judge of the weight of the evidence and the credibility of the witnesses" presented to show the reasonableness and necessity of rate-case

9

expenses, but it "may not disregard undisputed facts or testimony unless the record contains 'some explanation or reason upon which the reasonableness of [its] action might be judged.'" *City of Port Neches*, 212 S.W.3d at 579-80 (quoting *Cities of Port Arthur, Port Neches, Nederland, & Groves v. Railroad Comm'n of Tex.*, 886 S.W.2d 266, 271 (Tex. App.—Austin 1994, no writ)). The Commission's explanation need not necessarily appear in the final order, as long as it is contained somewhere in the record. *See id.* at 580 (holding action ultimately taken by Commission was supported by thorough and accurate explanation in proposal for decision, which was supported by testimony in record).

In this case, the Commission disallowed recovery of rate-case expenses based on its determination that the Coalition had litigated irrelevant and unnecessary issues. The Coalition argues that the disallowance was arbitrary and capricious and an abuse of the Commission's discretion because it was based on the outcome of Docket No. 10075, a proceeding that the Coalition was not permitted to participate in, and from which the Coalition was unable to ascertain the necessary facts to avoid the reduction in expenses. Consequently, the Coalition contends, the facts in the record do not support the disallowance of expenses, which it asserts makes the result unreasonable on its face. Our examination of the record demonstrates that CenterPoint informed the Coalition from the beginning of the appeal to the Commission that CenterPoint was amending its original request to the Coalition to seek approval of the COSA-2 adjustment approved in Docket No. 10075, and it provided the Coalition with the particulars of the adjustment that the Commission had approved in Docket No. 10075.

The Coalition asserts that it "had no way of knowing precisely what issues had been addressed in [Docket] No. 10075 because the Commission prevented the Coalition from participating in [Docket] No. 10075" and because no publicly available document set forth the terms of CenterPoint's settlement with the Commission. As an initial matter, we note that the Coalition is not appealing the hearing examiners' and the Commission's denial of its motion to intervene in Docket No. 10075, so the issue of whether that denial was appropriate is not before this Court. More importantly, CenterPoint's initial petition for review in Docket No. 10106 notified the Coalition that CenterPoint "by this appeal seeks approval of the same COSA-2 adjustment for the [Coaltion] Cities as the Commission has already approved for the cities under the original jurisdiction of the Commission in [Docket] No. 10075." CenterPoint also included the Commission's final order from Docket No. 10075 ("10075 Final Order") as an exhibit to its petition for review in Docket No. 10106. The Coalition suggests that the 10075 Final Order does not detail the adjustments made by the Commission and that two findings of fact (Nos. 36 and 37) in the 10075 Final Order provide the only information about the issues upon which the Commission and CenterPoint reached a compromise. However, Exhibit A to the 10075 Final Order, entitled "Prior Commission Decisions Applicable to CenterPoint's COSA Applications," includes prior docket citations and explanations of the Commission's requirements of CenterPoint related to the issues that the Commission later determined that the Coalition unnecessarily litigated. Exhibit B to the 10075 Final Order sets forth the adjusted COSA-2 Cost of Service, showing the calculations after the agreed adjustments.

In addition, the prefiled direct testimony of one of CenterPoint's witnesses, Scott Doyle, which was included with CenterPoint's petition for review, reinforces CenterPoint's

11

petition. Doyle stated that CenterPoint sought approval in Docket No. 10106 from the Commission for "the same COSA-2 adjustment for the [Coalition] Cities as the Commission approved and found reasonable in [Docket] No. 10075" for the customers under the Commission's original jurisdiction.

After CenterPoint filed its initial petition for review, the parties had the opportunity to conduct discovery before the Commission staff and the Coalition were due to submit their witnesses' direct testimony. One of the Coalition's witnesses, Karl Nalepa, in his direct testimony recommended ten adjustments to CenterPoint's request, including adjustments to conform cash working capital to the Commission's prior order in Docket No. 9902 and adjustments to conform incentive compensation to the Commission's prior order in Docket No. 9902 and to reduce other employee expenses. The Commission and CenterPoint assert that the Commission had already made the adjustments to cash working capital, incentive-compensation expense, and other employee expenses in Docket No. 10075, and CenterPoint had therefore already incorporated them into its request on appeal in Docket No. 10106. Nalepa had recommended these same adjustments before CenterPoint's appeal to the Commission in an earlier consultant's report dated June 15, 2011. In Doyle's testimony filed with CenterPoint's petition for review, he addressed Nalepa's June report, stating that the hearing examiners in Docket No. 10075 analyzed each issue and evaluated "the Company's cash working capital, incentive compensation, and other [operations and maintenance] expenses" raised in the report. Doyle further stated that "[a]ccordingly, the rates approved by the Commission in [Docket] No. 10075 already include any adjustments necessary to assure that the COSA-2 adjustment complies with the terms of the COSA-2 tariff and prior Commission orders applicable to this case."

12

Furthermore, the Coalition was notified on the face of the 10075 Final Order that CenterPoint had already agreed to its adjustments regarding incentive-compensation expense and other employee expenses. Finding of fact number 36 in the 10075 Final Order states:

Following discussions between the Commission's Gas Services Division and CenterPoint, CenterPoint agreed to modify and re-file its requested COSA-2 adjustments to reflect ($148,156) of reductions to the cost of service, as shown on Exhibit B, Line No. 6, related to the decrease or removal of expenses for:

- Incentive compensation expense for employees that are neither direct employees of the Texas Coast Division nor Houston support employees

- Alcoholic beverage expense

- Entertainment expense

- Meal expenses without documentation

- Meal expenses in excess of $25 per person

- Meal expenses for charitable functions

- Meal expenses that are corporate allocations to the Texas Coast Division

- Lodging expense exceeding $150 per night

- Advertising, memberships, contributions, and donation expenses prohibited by Rule 7.5414

On appeal to this Court, the Coalition addresses only the two issues related to cash working capital.

Regarding cash working capital, finding of fact number 37 in the 10075 Final Order states:

Following discussions between the Commission's Staff and CenterPoint, CenterPoint reduced the amount of cash working capital included in the COSA formula by ($1,552,935), from ($590,077) to ($2,143,012), as shown on Exhibit B, Line No. 14. Consistent with the Commission's practice, an offsetting expense for factoring, in the

13

amount of $194,632, was included in the COSA formula, as shown on Exhibit B, Line No. 7.

The Coalition asserts that "cash working capital is a highly contested issue at the Commission, containing numerous sub-issues," but that the only information provided about the issue is found in finding of fact number 37 of the 10075 Final Order, and further, that Exhibit B does not explain the basis for the reduction in cash working capital. The Coalition contends that even if the discussions that took place between Commission staff and CenterPoint were "based on particular adjustments for lead or lag periods for particular expenses or payments[,] . . . no document provides this detail."

However, the information provided in the 10075 Final Order and its Exhibit A reflects that CenterPoint had already resolved the two issues related to cash working capital—bill processing lags and expense leads—more favorably than the Coalition requested. To calculate cash working capital, regulators must net revenue lags, which are the number of days between when the utility offers a service and when it receives payment, against expense leads, which are the number of days between when a utility purchases an item and when it tenders payment for that item. The net result of these two figures is used to calculate cash working capital. If the result is positive, then it is provided by investors and is an addition to rate base; if negative, it is provided by customers and thus a deduction to rate base. In his testimony, Nalepa recommended a cash-working-capital negative adjustment of $2,114,574 in favor of the Coalition, based on what he identified as CenterPoint's request for a cash-working-capital negative adjustment of $590,077. Nalepa asserted that the Commission's findings in Docket No. 9902 required a reduction in the bill-processing lag time and increase in the number of expense lead days. But CenterPoint had already agreed to a $2,143,012

14

negative adjustment in favor of the Coalition, based on the Commission's findings in Docket No. 9902. Later in his testimony, Nalepa acknowledged that "***[t]he Commission Staff's analysis was consistent with my recommendation that the Company's working capital calculation in the COSA application should be consistent with the Commission's findings in [Docket] No. 9902***." (Emphasis added.)

We conclude that the 10075 Final Order and its exhibits provided the Coalition with the necessary information for it to avoid unnecessarily litigating issues that had already been resolved in the manner it requested. But to the extent that the Coalition argues the information provided was not specific enough to prevent it from unnecessarily litigating the issues, it had another avenue available to it to "know[] precisely what issues had been addressed in [Docket] No. 10075." The parties had agreed to conduct discovery before the deadline for the Coalition to submit its witness testimony. The discovery process provided a way that the Coalition could have sought clarification regarding the underlying reasoning for the Commission's decision about specific adjustments before filing Nalepa's testimony. Knowing that it would bear the burden of proving the reasonableness of its rate-case expenses by a preponderance of the evidence, it was incumbent on the Coalition to ensure that it fully understood the basis for CenterPoint's revised COSA-2 adjustment request before responding to it.

In essence, the Coalition contends that the Commission's disallowance of its rate-case expenses for litigating these issues is arbitrary because a rational connection between the facts and

15

the decision is lacking.[5]  *See City of Waco*, 346 S.W.3d at 819.  Based on the record before us, we

disagree.  The Commission's conclusion that the Coalition unnecessarily litigated these issues is not

"a completely unreasonable result," as the Coalition alleges.  There is a rational basis in the record

for the Commission's decision that the Coalition did not need to litigate these issues that the

Commission had already resolved as it requested.[6]  Consequently, the Commission acted within its

discretion when it determined that some of the Coalition's rate-case expenses were related to

irrelevant and unnecessary issues, and its decision was not arbitrary and capricious.

**Substantial evidence supporting the Commission's decision to reduce rate-case-expenses by 40%**

Having concluded that the Commission's decision to disallow some of the Coalition's

rate-case expenses was within its discretion, we now turn to the issue of whether the amount of the

reduction in expenses was supported by substantial evidence and not arbitrary or capricious.  In the

proposal for decision, the hearing examiners proposed reducing the rate-case expenses requested by

---

[5] The Coalition contends that the Commission essentially improperly applied the principles of res judicata and collateral estoppel in Docket No. 10106 by applying rates based on the settlement agreement in Docket No. 10075.  We disagree.  The Commission did not wholesale apply its decision in Docket No. 10075 and preclude the Coalition from litigating any issues.  The Commission allowed the Coalition to litigate issues other than the ones it determined were irrelevant, and it did not reduce the Coalition's rate-case expenses for those issues.  Not awarding expenses for the litigation of issues that were irrelevant because they were not related to CenterPoint's rate request in Docket No. 10106 did not prevent the Coalition from presenting its case concerning relevant issues related to CenterPoint's rate request.

[6] Even if the adjustment amounts related to these issues are not precisely what the Coalition was seeking, the issues were resolved by the Commission in accord with the precedential basis that the Coalition suggested.  Thus, "the record contains 'some explanation or reason upon which the reasonableness of [the Commission's] action might be judged.'" *City of Port Neches v. Railroad Comm'n of Tex.*, 212 S.W.3d 565, 580 (Tex. App.—Austin 2006, no pet.).

16

the Coalition based on their concern that there was "certain duplication of effort or that certain issues raised were simply not relevant to this proceeding." The examiners proposed that a reasonable adjustment would be based on the percentage of issues that were not relevant to the proceeding. After considering the examiners' proposed rate-case-expense reduction, the Commission requested that the parties provide supplemental billing information to identify the amounts spent developing or responding to the evidence related to the four issues it identified as not relevant to this proceeding. In response, the Coalition explained that its review of its bills was "inconclusive in precisely determining the amount of time that was dedicated to a particular issue in this case based on billing information" because each time entry was not broken down by issue. Instead, the Coalition reviewed the testimony filed and briefs submitted as guidance for the amount of time allocated to the four issues by both the Coalition and CenterPoint. Based on its calculations, the Coalition proposed that if lines of testimony or pages of briefing are assumed to correlate with the amount of time dedicated to an issue, the parties spent approximately 9.9% to 16% of their time on these issues.

The Commission ultimately used three different methodologies to arrive at the 40% reduction. First, it found that four of the ten issues that the Coalition contended required an adjustment to CenterPoint's rate request were unnecessary because the cost-of-service calculation no longer included costs associated with those issues, meaning that the total percentage of irrelevant adjustments proposed by the Coalition was 40%. Second, it analyzed the proportion of Nalepa's testimony related to substantive issues as "a reasonable allocation of the amount of time dedicated by the consultants and attorneys of [the Coalition] to issues in this docket." The Commission calculated the number of lines dedicated to issues that were removed by CenterPoint from its rate

17

request and found that approximately 40.25% of Nalepa's substantive testimony was dedicated to issues no longer relevant to the proceeding. Third, the Commission also analyzed the proportion of the Coalition's briefing on substantive issues as "a reasonable allocation of the amount of time dedicated by the consultants and attorneys of [the Coalition] to issues in this docket." It calculated the number of pages dedicated to litigating issues that were removed by CenterPoint from its rate request and found that 39.2% of the briefing filed by the Coalition was related to issues no longer relevant to the proceeding.[7]

Both the Commission and CenterPoint urge that the Commission's decision to disallow 40% of the Coalition's expenses is fully supported by the facts in the record. CenterPoint also urges that the district court was not free to remand the case based on its disagreement with the amount of the disallowance, insisting that the substantial-evidence standard requires the court to affirm the Commission's order so long as some evidence supports the order and that the Commission is the sole judge of the weight to be given the evidence presented about the reasonableness and necessity of a rate-case expense. Moreover, as the Commission points out, the burden to prove its rate-case expenses is on the Coalition, and it was the Coalition that suggested a consideration of its testimony or briefing when it was unable to provide billing information to identify how much time was spent on the issues that the Commission determined were relevant to this proceeding versus issues that the Commission determined were not relevant.

---

[7] CenterPoint also provided an estimate of the time it spent on the four identified issues and estimated, based to some extent on its discovery, testimony, and briefing, that the amount of legal services incurred litigating those issues was approximately 20%. The Commission used this amount as part of the basis for the total amount by which the Coalition's expenses were reduced.

18

The Coalition, on the other hand, argues that the Commission acted arbitrarily and capriciously by applying a new standard with regard to rate-case expenses without prior notice to the parties or any explanation of its departure from past practices, relying on this Court's opinion in *Oncor Electric Delivery Co. v. Public Utility Commission of Texas*, 406 S.W.3d 253 (Tex. App.—Austin 2013, no pet.). In *Oncor*, the Court held that the Public Utility Commission acted arbitrarily and capriciously when it instituted a new policy requiring prior authorization before a utility could recover rate-case expenses incurred in an earlier rate case without notice to Oncor or an explanation for the Public Utility Commission's change from its past practice. *Id.* at 264-69, 272. The Coalition contends that because the hearing examiners' application of the methodology of expense allocation suggested by the Coalition differs from the Coalition's application of the same methodology, it was "atypical of Commission precedent relating to rate case expenses." The Coalition suggests that "[t]ypically litigants are not penalized for raising issues that were ultimately unsuccessful," citing to another docket in which the municipal intervenors were not successful on all issues raised, but in which the Commission did not reduce the requested rate-case expenses.

In this case, however, the Commission is not penalizing the Coalition for raising issues that were ultimately unsuccessful—instead, it determined that the Coalition litigated issues that were *irrelevant* and *unnecessary* because they related to adjustments that CenterPoint was no longer requesting in its revised cost-of-service calculation on appeal. The Coalition has not identified any cases in which parties recovered their expenses for litigating irrelevant and unnecessary issues that establishes the kind of agency prior practice that existed in *Oncor*. In fact, this Court has previously upheld the Commission's reduction of rate-case expenses on a percentage

19

basis based on a lack of adequate explanation or support for the expenses. *See City of Amarillo v. Railroad Comm'n of Tex.*, 894 S.W.2d 491, 496 (Tex. App.—Austin 1995, writ denied). Furthermore, the Coalition itself suggested the use of this methodology when it could not itemize its expenses by issue as requested, so its complaint that it lacked notice of the standard that the Commission would apply is unavailing. Likewise, to the extent that the Coalition complains that the issue of rate-case expenses was raised in the proposal for decision for the first time and that no party challenged its rate-case-expense request, we note that CenterPoint began explicitly pointing out that these issues were no longer part of its rate request with its rebuttal testimony and continued pointing it out throughout the briefing stage of the case. Furthermore, it is ultimately the Coalition alone that bears the burden of proving the reasonableness of its expense request. The standard at issue here is whether the expenses were reasonable and the work was "relevant and reasonably necessary." *See* 16 Tex. Admin. Code § 7.5530(a), (b) (2015) (R.R. Comm'n of Tex., Allowable Rate Case Expenses).

The Coalition also complains about how the hearing examiners applied the line-by-line analysis of Nalepa's testimony and discounted some lines of testimony when computing the allocation of testimony to the issues. The examiners recommended (and the Commission adopted their recommendation) that any allocation of lines of testimony be based upon an analysis of the substantive portions of the testimony, so they excluded the lines related to Nalepa's background, the procedural history of the case, the introduction to the rate-case-expense section, and a quotation of the rule related to rate-case expenses when computing the total substantive testimony related to proposed adjustments to CenterPoint's rate request and to the Coalition's rate-case

20

expenses. While yielding a different result from the calculation proposed by the Coalition, there is a rational connection between the facts and the Commission's decision to only count the lines of testimony related to substantive issues when calculating the proportion of testimony dedicated to unnecessary issues, and therefore, the Commission's decision is not arbitrary and capricious.

Even if we were to disagree with the Commission's exact calculation under any of the three methods, our ultimate concern is the reasonableness of the agency's order, not its correctness. *Brinkmeyer*, 662 S.W.2d at 956. The Commission is the sole judge of the weight of the evidence presented to show the reasonableness of an expense request, and we may not substitute our judgment for the Commission's on the weight of the evidence. *See City of Port Neches*, 212 S.W.3d at 579-80. The administrative record before this Court, including the examiners' and parties' correspondence, the proposal for decision, and the final order, provides substantial evidence supporting the Commission's decision to disallow 40% of the Coalition's rate-case expenses. We sustain the Commission's and CenterPoint's issue on appeal.

## CONCLUSION

Having concluded that the Commission acted within its discretion by disallowing 40% of the Coalition's rate-case expenses, we reverse the portion of the district court's order reversing and remanding the Commission's final order on the issue of the amount of the Coalition's rate-case expenses, and we render judgment affirming the Commission's decision to reduce the Coalition's rate-case expenses in the amount of $40,772.03.

21

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Reversed and Rendered

Filed:   May 31, 2016